JOSEPHINE M. SCHWEINLER, EXECUTRIX OF THE WILL OF CHARLES SCHWEINLER, DECEASED, PROSECU-TRIX, v. J. H. THAYER-MARTIN, STATE TAX COMMIS-SIONER, DEFENDANT.

IN THE MATTER OF THE TRANSFER INHERITANCE TAX IN THE ESTATE OF CHARLES SCHWEINLER, DE-CEASED.

Argued May 10, 1935—Decided September 30, 1935.

Before Justices PARKER, CASE and BODINE.

For the prosecutrix, *Merritt Lane*.

For the defendants, *David T. Wilentz* and *William A. Moore*.

BODINE, J. The writ brings up a decree of the Prerogative Court affirming a transfer inheritance tax assessed against the estate of Charles Schweinler in the sum of $155,148.64. The controversy hinges upon the proper construction of the phrase "in contemplation of death" as used in the Inheritance Tax law (*Pamph. L.* 1909, *ch.* 228; 4 *Comp. Stat., p.* 5301,

as amended; *Cum. Supp. Comp. Stat.* 1930, *p.* 1829, § 208-537), and the application of that language to the facts of the case. The statute lays a tax upon transfer made in contemplation of the death of the grantor.

The tax was assessed against certain gifts made *inter vivos,* as made in contemplation of and intended to take effect at death. The Prerogative Court on appeal found that the transfer was not intended to take effect in possession and enjoyment at the death of the donor, but was made in contemplation of death and was therefore taxable.

The pertinent facts appearing in the record and in the able opinion of Vice-Ordinary Buchanan are as follows: "The gift in question was made when the donor was almost seventy-three years of age, and he lived only one year thereafter. The gift was made to his wife and his four children (the natural recipients of his estate at his death) in equal shares; it consisted of practically the entire outstanding stock in the corporation bearing his name, organized and built up by him, and which (until his gift) had been solely owned by him for some twenty years. It amounted in the aggregate to over $3,000,000, and constituted (as a practical matter) his entire estate. His remaining assets were equalled by his debts. At his death, a year later, his estate was insolvent; his assets being about $300,000 and his debts and funeral expenses over $325,000 as found by the commissioner—$416,000 as claimed by appellant. A year and a half before the gift, he had made his will, by which he left his entire estate to his wife, or in the event of her prior decease, equally among the children. It does not appear that he had made any will prior to that time. January 1st, 1925 (five months before the making of the will) he transferred from himself to the corporation over $1,000,000 in securities, which were in nowise needed by the corporation. (It is true that corresponding indebtedness on the books of the corporation, from himself to the corporation was credited with this amount, but this indebtedness was merely nominal. Remembering that he was the sole owner of the company, it is obvious that the withdrawals thus carried on the books as debts were substantially dividends—earnings which he had withdrawn and used for himself.) Following

the gift, although he retained only one share of stock, he continued as president of the company; continued to draw his previous salary of $30,000 a year; continued to draw at will from the company's fund for his own private purposes, just as before. (His withdrawals for the twelve months preceding his death totaled over $137,000.) He continued to attend at the company's place of business every day; 'there was no difference' in his control and management of the business after the gift of the stock from what it was before. He negotiated and determined large transactions without consulting anyone else."

It also appears that decedent suffered for some years past from arterio sclerosis. He was the dominating person in the corporation before and after the transfer. While apparently out of control he remained in active charge thereof. He obviously made the transfer conscious of his impending demise and to evade the payment by his estate of transfer taxes. Although he exercised control he deprived himself of the means so to do without resort to law, if he should be opposed. He gave the natural objects of his bounty control of practically his entire property, hoping that they would not have to pay transfer taxes, as he knew they would be obliged to do if the transfer occurred by reason of his death. Such a transfer was clearly made in contemplation of death and was taxable.

The motive for the transfer appearing from all the facts and circumstances proved the ruling was proper. · *United States* v. *Wells,* 283 *U. S.* 102. The mere circumstance that the decedent at the time he made the transfer appeared to be a well man to some of his friends cannot overcome the fact that by reason of his age and state of health he must have known that he was close to his end and chose this method of transferring his estate to evade, if possible, taxes imposed upon a transfer by death.

The conclusion of the vice-ordinary being abundantly supported by the proofs we have examined, it is unnecessary to review matters unnecessary to a decision of the case.

The writ will be dismissed, with costs.